IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| LEONARD PETERSON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. _____ |
| v. ) | |
| ) | **PETITION FOR JUDICIAL** |
| UNITED STATES DEPARTMENT OF ) | **REVIEW OF ADVERSE FINAL** |
| AGRICULTURE ) | **AGENCY DETERMINATIONS** |
| ) | |
| Defendant. ) | |
| ) | |

## INTRODUCTION

1. NATURE OF THE CASE

Plaintiff Leonard Peterson seeks review of adverse decisions of Defendant United States Department of Agriculture, finding him in violation of certain Natural Resources Conservation Service ("NRCS") wetland conservation regulations and holding him ineligible for USDA benefits as a result of the alleged violations.

2. PLAINTIFF

Plaintiff Leonard Peterson ("Peterson") farms in LaMoure County, North Dakota. Peterson has exhausted administrative remedies and has standing to commence this action for judicial review pursuant to 7 U.S.C. § 6999. Peterson resides at 6683 Co Rd 63, LaMoure, ND 58458.

3. DEFENDANT

The United States Department of Agriculture ("USDA") implements the farm programs that gave rise to this action and, in so implementing, has made determinations adverse to Peterson's interests. USDA employees implement wetland conservation programs at the local level from a county NRCS office in LaMoure County, North Dakota.

1

**JURISDICTION AND VENUE**

4. This court has jurisdiction pursuant to 5 U.S.C. § 701, 7 U.S.C. § 6999, and 7 C.F.R. § 1113.

5. Venue is proper in this court because the events or omissions giving rise to the claims occurred in this district and division, where Peterson resides and farms and Defendant implements USDA farm programs through NRCS.

**FACTUAL AND ADMINISTRATIVE BACKGROUND**

6. Peterson has farmed in LaMoure County, North Dakota, for thirty years.

7. In 2002, Peterson began farming leased land including Tract 2135, an area including wetlands that Defendant has accused Peterson of converting.

8. The farmland in Tract 2135 is flat to very gently sloped, with grades of 0 to 2%. It contains numerous small depressions designated as wetlands, including some that dry out entirely in dry years. Many of the wetlands naturally drain from one to another. Peterson planted some of the wetlands in dry years and planted around them in wet years.

9. Peterson's son, Cody Peterson, began farming with him beginning in 2006.

10. In 2009, Peterson hired local farmer Bruce Shockman (Shockman) to use a scraper to grade areas between the wetlands to allow Peterson's farming equipment to pass more easily and prevent damage to his equipment.

11. Two months prior to starting grading work on Tract 2135, Peterson contacted the local NRCS District Conservationist ("DC") to ask what he could do about washouts caused by heavy rains and snow melt. The DC responded that he would go out and look when he had time. Peterson went into the NRCS office near the first of August, 2009 to ask again what he could do. They discussed "pulling the shoulders off" the washouts, a practice in which a grader flattens the

edges of natural drainages between the wetlands so that farm machinery can pass over more easily. The DC did not provide Peterson with answers, nor did DC inspect the farmland prior to commencement of grading work.

12. On August 18, 2009, prior to beginning to smooth land between the wetlands with a grader, Shockman talked with the DC to be sure he wouldn't be doing anything wrong. He was told that he couldn't go deeper than the washouts. Cody Peterson followed the grader with a disc, to smooth out areas where the blade dumped dirt. The grader flattened the edges of natural drainages between the wetlands. Shockman also removed fill caused by tillage and rainfall that was blocking the wetlands' natural outlets.

13. Also on August 18, 2009, as a result of a neighbor's complaint, the DC drove to the site to investigate the work being done on Tract 2135.

14. Shockman and Cody Peterson saw the DC and drove toward him to talk with him. The DC drove away.

15. As the DC left, Shockman called the DC to ask if there was a problem with the work he and Cody Peterson were doing. The DC told him he saw nothing being done wrong and that was why he left. Shockman and Cody both called Peterson to tell him about the DC's coming out and leaving without speaking to them. Peterson instructed Shockman and Cody to discontinue work until he had a chance to talk with the DC. Shockman and Cody quit work for the day.

16. The next morning, August 19, 2009, Peterson called the DC and asked if there was any problem with Shockman and Cody Peterson's work on Tract 2135. The DC told Peterson that he left because he had not seen anything wrong. When Peterson asked the DC if Shockman and Cody could finish the work, the DC told him: "As I said, you are doing nothing wrong." Shockman and Cody finished smoothing out the rough spots on August 19, after Peterson had

talked with the DC.

17. On November 30, 2009, the DC notified Peterson that NRCS had received a report of a potential wetland violation on Tract 2135.

18. In September 2010, NRCS employees Mark Anderson, a Resource Conservationist ("Resource Conservationist") and David Brecker, a Resource Soil Scientist ("Soil Scientist") (together the "NRCS team") conducted a site assessment on Tract 2135.

19. Based solely on a review of aerial photography of Tract 2135 from 1981 through 2009, the Resource Conservationist concluded that drains for wetlands 12, 15, 17, and 18 first appeared in 2006 and drains for wetlands 16, 30, and 32 first appeared in 2009.

20. A converted wetland is defined by federal regulation as "a wetland that has been drained, dredged, filled, leveled, or otherwise manipulated (including the removal of woody vegetation or any activity that results in impairing or reducing the flow and circulation of water) for the purpose of or to have the effect of making possible the production of an agricultural commodity without further application of the manipulations described herein if: (i) Such production would not have been possible but for such action, and (ii) Before such action such land was wetland, farmed wetland, or farmed-wetland pasture and was neither highly erodible land nor highly erodible cropland." 7 C.F.R. § 12.2(a).

21. On October 18, 2010, NRCS issued a preliminary wetland technical determination identifying 4.7 acres of Tract 2135 as converted wetlands and finding that Peterson converted four wetlands in 2006 and three more in 2009. Thirty days later, the preliminary determination became final ("NRCS Technical Determination").

22. On December 14, 2010, the Farm Service Agency ("FSA") issued a decision ("FSA Decision"), approving the NRCS Final Determination and declaring Peterson ineligible for

4

USDA benefits as a result.

23. The Food Security Act of 1985 includes provisions linking eligibility for USDA program benefits to farming practices on wetlands, through the Act's highly erodible land and wetland conservation rules (HELC and WC).

24. It is undisputed that Peterson farmed and produced agricultural commodities on Tract 2135 under natural conditions.

25. When spring moisture is sufficient, the allegedly "converted wetlands" on Tract 2135 continue to function as wetlands today, exactly as they did prior to Peterson's grading activities.

26. As a result of the FSA Decision, FSA has withheld from Peterson farm program payments for 2008 through 2010 totaling $135,959.

27. On January 18, 2011, Peterson filed an appeal with the USDA's National Appeals Division ("NAD").

28. An in-person hearing was held on April 26 and 27, 2011, before a NAD hearing officer.

29. During the hearing, two expert witnesses testified on behalf of Peterson. Lanny Faleide, president of Sat Shots and Agri ImaGIS Technologies, testified regarding satellite imagery showing Tract 2135.

30. Dr. Frank Beaver, who received a Bachelor of Science Degree in Chemistry and Math from Bemidji State, a Bachelor of Science Degree in Civil Engineering from University of North Dakota in 1969, a Masters Degree in geological engineering and 1984 and a Doctorate in Geology in 1986 from the University of North Dakota, also testified as an expert witness on behalf of Peterson. Over the course of his career, Beaver has focused on water resources, taught hydro-geology courses, had contracts to look at wetlands for the Red River Prairie Project, and through his positions in research centers has created, designed, and drained wetlands for research

purposes. He testified that he had observed the land in dispute, that he had seen the wetlands in issue, and pointed out the natural drainage pattern on the maps. Based on the photos and his observations on the ground, Dr. Beaver explained that the drainage apparent on the aerial photos is natural drainage. He further testified that the effect of the work done by Shockman and Cody would not have drained, dredged, filled, or manipulated the wetlands. He backed this up with references to the aerial and satellite maps.

31. Mark Anderson, a Resources Conservationist for NRCS, testified for the government. Mr. Anderson has a Bachelor of Science Degree from North Dakota State University and has worked for NRCS since 1978.

32. Mr. Anderson testified that he determined that wetlands numbers 12, 15, 17, and 18 were converted in 2006 based on his not seeing drains on any of the aerial photographs he reviewed from years prior to 2006.

33. Mr. Anderson testified that he determined that wetlands numbers 16, 30, and 32 based on his inability to see evidence of drains prior to the 2009 aerial photographs.

34. On August 18, 2011, the NAD Hearing Officer issued an Appeal Determination ("NAD Appeal Determination") concluding that Peterson had converted wetlands in 2006 and 2009 and that the FSA Decision was not erroneous.

35. On September 22, 2011, Peterson filed a timely request for Director review of the NAD Appeal Determination, seeking to overturn the Hearing Officer's Appeal Determination and seeking equitable relief.

36. "The Director shall complete the review and either issue a final determination or remand the determination not later than – 30 business days after receipt of the request for review, in the case of a request by an appellant for review." 7 U.S.C. § 6998(b).

37. On June 18, 2012, nearly eight months after Peterson's request for Director review, NAD Deputy Director James T. Murray ("Deputy Director") issued a Director Determination upholding the NAD Appeal Determination, finding it was supported by substantial evidence in the record, and denying equitable relief.

38. The NAD Director has the authority to grant equitable relief to the same extent as such authority is provided the agency. 7 C.F.R. § 11.9(e).

## CAUSE OF ACTION: USDA'S DETERMINATIONS ARE ARBITRARY, CAPRICIOUS, OTHERWISE NOT IN ACCORDANCE WITH LAW, AND UNSUPPORTED BY SUBSTANTIAL EVIIDENCE

39. Peterson adopts and incorporates into this Cause of Action each allegation contained in paragraphs 6 through 38 above.

40. NRCS's determination that Peterson converted wetlands in 2006 and 2009 was not supported by substantial evidence.

41. The NAD hearing officer's appeal determination was arbitrary in discounting the expert testimony provided by Dr. Frank Beaver and the testimony and satellite imagery provided by Lanny Faleide.

42. The NAD hearing officer's appeal determination was arbitrary in ignoring admissions of NRCS personnel during the NAD hearing.

43. The NAD hearing officer's appeal determination was not supported by substantial evidence.

44. The Director Review Determination was arbitrary and capricious in adopting the hearing officer's appeal determination without full consideration of Peterson's position in the review.

45. The Director's Determination was not issued in accordance with the law.

46. The Deputy Director's finding that Peterson failed to prove by a preponderance of the evidence that the wetlands were not converted or that the NRCS Technical Determination was erroneous is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and unsupported by substantial evidence.

47. The Deputy Director's finding that he lacked authority to grant equitable relief to Peterson is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and unsupported by substantial evidence.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Leonard Peterson respectfully requests that the court:

A) Reverse and set aside as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and as unsupported by substantial evidence, the Director's Determination that Peterson converted the subject wetlands and is no longer eligible for USDA benefits;

B) Enter judgment in favor of Peterson and against Defendant in the amount of $135,959 with interest;

C) Award Peterson his attorneys' fees and costs under the Equal Access to Justice Act; and

D) Grant all other relief the court deems just and proper.

Dated this 20th day of May, 2013.

/s/ Beth Baumstark
Beth Baumstark
Carrie L. La Seur
109 N. 4th St., Suite 100
Bismarck, ND 58501
Phone: 701-221-2911
Fax: 701-221-5842
Email: beth@baumstarkbraaten.com
carrie@baumstarkbraaten.com
*Attorneys for Plaintiff*