IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Leonard Peterson,<br><br>    Plaintiff,<br><br>  -vs-<br><br>United States Department of Agriculture,<br><br>    Defendant. | Case No. 3:13-cv-34<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. Introduction

Before the Court are cross motions for summary judgment.[1] Plaintiff Leonard Peterson seeks judicial review of a final determination of the United States Department of Agriculture's National Appeals Division ("USDA"). The Farm Service Agency ("FSA") determined that Peterson violated the Swampbuster provisions by deepening natural drains on farmland that he operated in LaMoure County, North Dakota in 2006 and 2009. Peterson has exhausted his administrative appeal rights. Because the Agency misapplied the law, Peterson's motion for summary judgment is GRANTED and the agency's decision is REVERSED. The USDA's motion for summary judgment is DENIED.

## II. Factual Background

Peterson leases and farms land designated as Farm Serial Number 6490, Tract 2135 on the SE 1/4, §15, T.135N, R 61W ("Tract 2135"). While the agency has determined that Peterson converted wetlands in both 2006 and 2009, this case came

---

[1] Docs. #15 & 17.

1

about because of Peterson's actions in 2009. Heavy rains in 2009 caused washouts to form on Tract 2135. Peterson maintains that he contacted District Conservationist Darin Hirschkorn about smoothing over the rough top edges of the natural drains because he risked damaging his equipment when passing between the non-wetland portions of the land and the wetland portions. Peterson asserts that Hirschkorn advised him that he could smooth out the edges so long as he did not deepen them. Hirschkorn denies making this statement.

In August 2009, Peterson hired a neighbor to use a grader to scrape the rough raised edges, i.e. "pull the shoulders". Peterson contends that the grader operator consulted with Hirschkorn about what work would be acceptable, and complied with his directions. While the grader was scraping the drains, Hirschkorn visited the site in response to a complaint. When the grader operator saw Hirschkorn, he drove toward Hirschkorn attempting to talk to him but Hirschkorn drove away before the grader operator got there. The grader operator contacted Peterson and Peterson told him to stop work until he had a chance to talk to Hirschkorn. Peterson contacted Hirschkorn the next day about the grading work. Peterson asserts that Hirschkorn did not identify a problem or direct him to stop the grading work.

On November 30, 2009, Peterson received notice of a potential violation. In December 2009, the LaMoure County Natural Resource Conservation Service ("NRCS") began a Wetland Conservation compliance review on Tract 2135. When Peterson discovered NRCS inspectors had dug 25 to 50 holes on less than 25 acres of planted winter wheat, he asked them to leave out of concern that the further digging would cut off the roots and kill the wheat. The NRCS notified FSA of a potential violation for

denial of access to the property. The FSA, in turn, notified Peterson that he was ineligible for farm program benefits for 2009 and succeeding crop years due to his denial of access. Peterson appealed the FSA's determination of ineligibility.

The LaMoure County FSA Committee ("COC") reviewed Peterson's case and restored Peterson's eligibility for farm program benefits in a February 5, 2010 letter. On March 3, 2010, the Executive Director notified Peterson that the state FSA office overruled the COC and determined Peterson remained ineligible for benefits.

After inspections in September 2010, the NRCS determined Peterson violated Wetlands Conservation rules and was ineligible for farm program benefits. Peterson has been unsuccessful in his administrative appeals. From 2008 through 2010, Peterson has been deprived of $135,959.00 in payments withheld by the FSA. In addition, the FSA claims it is entitled to seek reimbursement of $175,504.00 of program payments made to Peterson during 2006 and subsequent crop years; however, it appears the FSA has not actively pursued reimbursement.

## III. Standard of Review

Section 6999 of Title 7, of the United States Code, provides: "a final determination of the [National Appeals] Division shall be reviewable and enforceable by any United States District Court of competent jurisdiction."[2] The Administrative Procedures Act allows for judicial review of decisions of the Farm Service Agency.[3] Under the Administrative Procedures Act, the standard of review is whether the action

---

[2] 7 U.S.C. § 6999.

[3] Anderson v. Farm Service Agency of the United States Dep't of Agric., 534 F.3d 811, 814 (8th Cir. 2008).

of the agency is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law;"[4] or whether the decision is "without observance of procedure required by law;"[5] or whether the decision is "unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute."[6] A court reviewing an agency decision should not interfere with the decision unless it is arbitrary, capricious, an abuse of discretion, not in accord with the law, or unsupported by the evidence. The reviewing court is not free to conjure up a reasoned basis for the agency decision that has not been offered by the agency itself.[7] The standard imposed on the reviewing court is not a strenuous one – an agency action is to be invalidated only if it is not rational, or is not based on a consideration of relevant factors.[8] In reaching its decision, the district court must be searching and careful, but it is not empowered to substitute its judgment for that of the agency. Equally as narrow is the standard of review under the substantial evidence test. A reviewing court must uphold the agency's decision if it is supported by "substantial evidence."[9] "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[4] 5 U.S.C. § 706(2)(A).

[5] 5 U.S.C. § 706(2)(D).

[6] 5 U.S.C. § 706(2)(E).

[7] Motor Vehicles Mfgs. Ass'n of U.S., Inc. v. State Farm Mutual Auto Ins. Co., 436 U.S. 29, 43 (1983).

[8] F.C.C. v. Nat'l Citizens Committee for Broadcasting, 436 U.S. 775, 803 (1978).

[9] Cox v. United States Dep't of Agric., 925 F.2d 1102, 1104 (8th Cir. 1991).

conclusion."[10]

The reviewing court must also give deference to the agency's interpretation of its rules and regulations as long as that interpretation is not "plainly erroneous" or "inconsistent with the regulation."[11] The more technical and complex the regulatory area is, the more the courts defer to the expertise of the agency as a matter of public policy.[12] The agency need not adopt the most natural or most reasonable interpretation, all that is required is that the interpretation be a reasonable one.[13]

**IV.   Analysis**

Peterson contends the agency erred in its determinations because: (1) he acted in good faith reliance on Hirschkorn's instructions; (2) he did not convert wetlands; (3) the hearing officer and deputy director issued decisions that are arbitrary, capricious, an abuse of discretion, and not in accordance with applicable law; and (4) he is entitled to a good faith exemption from ineligibility.

Responsibility for administering the Swampbuster provisions is divided between two USDA agencies - the NRCS and the FSA. NRCS makes all technical determinations, evaluates any restoration and mitigation plans, and conducts monitoring activities.[14] The responsibilities of the FSA include making determinations on the (1) the ineligibility

---

[10] Valkering, USA, Inc. v. United States Dep't of Agric., 48 F.3d 305, 307 (8th Cir. 1995) (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)).

[11] Thomas Jefferson University v. Shalala, 512 U.S. 512 (1994).

[12] Id.

[13] Chalenor v. University of North Dakota, 291 F.3d 1042,1045 (8th Cir. 2002) (citing Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 702 (1991)).

[14] 16 U.S.C. § 3822(j); 7 C.F.R. § 12.6(c).

of benefits; (2) whether the violations were made in good faith; and (3) whether any other exemptions apply to the conversion of the wetland.[15]

With this statutory regime in mind, as well as the applicable standard of review, the Court turns to Peterson's arguments. A "converted wetland" is "wetland that has been drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water) for the purpose or to have the effect of making the production of an agricultural commodity possible…."[16] The NRCS conducted a site assessment of the farmland in September 2010. The assessment team included two experts: Mark Anderson, Resource Conservationist; and David Becker, a Resource Soil Scientist. Based on the expert opinions presented by Anderson and Becker, the Deputy Director concluded that wetlands 12, 15, 16, 17, 18, 30, and 32 of Tract 2135 meet the definition of converted wetlands. When making his findings on Director Review, the Deputy Director acknowledged that Peterson presented "considerable evidence" to counter the agency's case, including two of his own experts. After weighing the experts' opinions, however, the Deputy Director was more persuaded by the FSA's experts.

With regard to the expert testimony, the USDA frames the issue as one of a "battle of the experts" in which deference should be given to the agency. Peterson contends the issue is more than a battle of the experts; rather, it is about a methodology

---

[15] 7 C.F.R. §§ 12.6(a), 12.6(b)(3)(viii).

[16] 16 U.S.C. § 3801(a)(6)(a); See 7 C.F.R. §12.2 (a "converted wetland" is "wetland that has been drained, dredged, filled, leveled, or otherwise manipulated (including the removal of woody vegetation or any activity that results in impairing or reducing the flow and circulation of water) for the purpose of or to have the effect of making possible the production of an agricultural commodity without further application of the manipulations described herein…."

accepted by the agency that was so flawed that the expert opinions are unreliable and incapable of being reproduced by objective scientific methods.

Upon a review of the administrative record, there is sufficient evidence establishing an adequate foundation for the methodology utilized by Anderson. There is also substantial testimony regarding whether Anderson's determinations, if outside the small margin of error he identified, would lead to a different result. Anderson acknowledged before the hearing officer that his measurements were based on visual approximations, and that not all inspectors would necessarily come up with the same result. He further acknowledged the small margin of error in his analysis. The agency, however, gave no consideration to the notion that a small change in the visual approximations by the expert - visual approximations that could easily vary slightly between the inspectors - might lead to a different result. In light of the small margin of error involved in the analysis, the Court questions the wisdom of failing to consider the reliability of a methodology involving visual approximations that will likely differ between inspectors. This Court may not, however, substitute its judgment for that of the agency.[17]

Peterson also sought a good faith exemption. The USDA concedes that the Director failed to conduct a good faith analysis. Counsel for the USDA opined, contrary to the Director's determination, the Director has the authority to grant equitable relief. Even so, the USDA maintains that engaging in such an analysis would be futile for two reasons: (1) the man-made drains reduced the natural drains between 21% and 50%

---

[17] Downer v. United States By and Through U.S. Dep't of Agric. & Soil Conservation Serv., 97 F.3d 999, 1002 (8th Cir. 1996) (an agency may rely on the reasonable opinions of its own qualified experts even if a court might find contrary views more persuasive).

thus the reduction in ponding depth is more than minimal; and (2) Peterson never requested or agreed to a restoration plan. In light of the fallacies of the methodology noted in the previous paragraph along with Peterson's claim that the soil scientist's reliance on anaerobic vegetation found on other parts of the farmland is simply too speculative to support his conclusion that the wetlands at issue have been converted, the Court has grave concerns about whether there is substantial evidence to support a finding that there has been the reduction in ponding asserted by the agency's experts. The Court need not reach these issues, however, because the record makes plain that the agency misapplied the law in finding that there has been converted wetlands.

In order to convert a wetland there must be some manipulation "for the purpose or to have the effect of making the production of an agricultural commodity possible."[18] The general purpose of the Swambuster provisions is "to combat the disappearance of wetlands through their conversion into crop lands. . . ."[19] After the 1990 Swampbuster amendments, a person may become ineligible for USDA farm benefits either by (1) converting wetlands and growing crops on the land if the conversion is after December 23, 1985, or (2) converting wetlands so that crops could be grown on the land after November 28, 1990.[20]

Under either circumstance, the statute makes clear that a converted wetland is defined in functional terms with reference to either having the purpose of or the effect of making possible the cultivation of crops on the land. Generally, the factual setting of the

---

[18] 16 U.S.C. § 3801(a)(6)(A).

[19] Gunn v. United States Dep't of Agric., 118 F.3d 1233, 1235 (8th Cir. 1997).

[20] United States v. Dierckman, 201 F.3d 915, 918 (7th Cir. 2000).

wetlands at issue is cyclical; however, unprecedented flooding has occurred in the area in the last six years. Nonetheless, even assuming there has been a reduction in the ponding due to Peterson's manipulation of the drains, there is a lack of evidence in the administrative record that Peterson's manipulation had the purpose of or the effect of making possible the production of an agricultural commodity. The annual aerial photographs clearly show the existence of the wetlands and the continued existence of the wetlands. There is a lack of evidence in the record that Peterson manipulated the drains in 2006. In 2009, there is insufficient evidence from which a fact-finder could conclude the scraping of the drains lead to an increase in production of crops or had the effect of making the production of an agricultural commodity possible on Tract 2135. At most, manipulation of the drains allowed Peterson to operate his farm equipment between wetlands portion of the land and non-wetlands portion without a high risk of damage to the machinery. "An overreaching and erroneous interpretation of the statute cannot be in accordance with the law."[21] The agency's interpretation of the law conflicts with the plain statutory definition of a converted wetland and is, therefore, not in accordance with the law.[22]

## V. Decision

The administrative record lacks evidence to support the agency's determination that Peterson's manipulation of the drains was for the purpose of or made possible the

---

[21] Barthel v. United States Dep't of Agric., 181 F.3d 934, 937 (8th Cir. 1999) (quoting Downer, 97 F.3d at 1010).

[22] Koshman v. Vilsack, 865 F.Supp.2d 1083, 1095 (E.D.Cal. 2012) (deputy director's interpretation that the plaintiff converted the wetland by "making the land more farmable", which in turn was accomplished "through better water management", allowing plaintiff to increase productivity and assist in his rice production was not in accordance with the law).

production of an agricultural commodity. Because the agency's application of the law conflicts with the plain language of the statutory definition of converted wetland, Peterson's motion for summary judgment is **GRANTED**, and the agency's decision is **REVERSED**. The USDA's motion for summary judgment is **DENIED**. The Clerk is directed to enter Judgment in favor of Peterson.

**IT IS SO ORDERED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 26th day of September, 2014.

/s/   Ralph R. Erickson
Ralph R. Erickson, Chief Judge
United States District Court